

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

TAMMY FAYE GRANT, on her own behalf, )
and as Administrator for THE ESTATE OF )
CORNELIUS WARE, Deceased, )
)
      Plaintiff, )
)
v. )   No. 04 C 2612
)   Judge Joan H. Lefkow
CITY OF CHICAGO and CHICAGO POLICE )
OFFICERS ANTHONY BLAKE, )
JOHN CLEGGETT, RICHARD GRIFFEN, )
and TIFFANY WALKER, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

In this case brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, Tammy Faye Grant, the plaintiff administrator of the estate of her son, Cornelius Ware, has alleged that four Chicago police officers violated Ware's constitutional rights in effecting an arrest by using excessive force that caused his death. Plaintiff alleges that at the time he was shot, Ware was unarmed and holding his hands up in a gesture of surrender. Plaintiff also has sued the City of Chicago, alleging that the City has a practice of excusing officers' wrongful use of deadly force by unquestioningly accepting standard but sometimes false assertions that the victim had either pointed a weapon at the officer or attempted to grab the officer's weapon so as to create a defense of justifiable use of force. (Other state law claims are contained in the complaint but not pertinent to the motion before the court). The claim against the City relies on the doctrine of *Monell v. Department of Social Service of the City of New York*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), that a municipality

1

can be held liable under § 1983 when a constitutional deprivation arises from a governmental custom or policy.

Although the City denies that the officers acted pursuant to any policy or custom of the City, it has moved to bar the trial of the *Monell* claim by waiving its right to demand proof and stipulating to entry of judgment against the City for any award of damages imposed on the officer defendants.[1] The City argues that because the case against it stands or falls on the case against the officers, and because proof of policy and custom cannot add anything to plaintiff's damages, there is no case or controversy between plaintiff and the City. The City relies, *inter alia*, on *Alliance to End Repression v. City of Chicago*, 820 F.2d 873 (7th Cir.1987) (where parties settled damages claim, and where no case or controversy remained concerning whether the City had violated the class plaintiffs' constitutional rights, plaintiffs were not entitled to attorneys' fees under § 1988 for work done after settlement), and *Ashcroft v. Mattis*, 431 U.S. 171, 52 L. Ed. 2d 219, 97 S. Ct. 1739 (1977) (where police officers prevailed on defense of good faith, there was no case or controversy justifying review of a lower court ruling that a state law authorizing the officers' action was unconstitutional). The City urges that removal of the *Monell* claim would simplify discovery and trial and therefore reduce expenditure of everyone's resources. The City points to several decisions of judges of this court granting identical or similar motions. *Kunz v. City of Chicago*, order of Aug. 13, 2003,

---

[1] Paragraph 5 of the City's "Waiver of Requirement of Proof that City Caused Constitutional Violation" provides,

> Notwithstanding its denial of plaintiff's allegations, the City agrees to entry of judgment against the City on plaintiff's § 1983 claim against it under Count I, if and only if the finder of fact in this case finds that one or more City employee [*sic*] violated plaintiff's constitutional rights under the Fourth Amendment. In this case only, the City specifically waives its right under *Monell* . . . not to be held liable in damages under § 1983 without proof that the City by its "policy, custom, or practice" caused the constitutional violation alleged in Count I.

2

No. 01 C 1753 (granting motion to bar discovery and trial of policy issues) (Judge Zagel); *Wawryniuk v. City of Chicago*, order of April 30, 2004, No. 03 C 4291 (granting motion to bar discovery of policy issues where City had stipulated that the officer's conduct was the result of municipal policy and to a causal link between the conduct and the plaintiff's injury, leaving only the question whether the officer's conduct had been unconstitutional, and noting "there will not be a need for a second trial regardless of the outcome of the first trial") (Judge St. Eve); *Lopez v. City of Chicago*, order of Oct. 27, 2004, No. 01 C 1823 (barring trial on *Monell* claim where City, without admitting unconstitutional policy or practice, consented to judgment based on the officer's unconstitutional conduct) (Judge Der-Yeghiayan); *Jones v. City of Chicago*, No. 98 C 5418, 1999 WL 160228 (N.D. Ill. Mar. 10, 1999) (granting motion to bifurcate *Monell* claim because convenience, expedition and economy are served, and the likelihood of prejudice to officers would be avoided) (Judge Kocoras).

Plaintiff argues that the City may not deprive a court of authority to adjudicate the City's liability by waiving proof; rather, if the City wants to waive proof, it must admit the allegations of the complaint as contemplated by Rules 7 and 8 of the Federal Rules of Civil Procedure. Plaintiff further contends that a case or controversy exists even where the *Monell* claim does not provide the plaintiff any greater damages or collectability, citing *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), in which the court recognized that the City's statutory duty to indemnify resulted in little or no practical significance of the *Monell* claim but upheld the judgment against the City rather than treat the claim as moot. Next, plaintiff argues that plaintiff is entitled to prove her claim because deprivation of a constitutional right is actionable for nominal damages without proof of actionable injury, citing *Carey v. Piphus*, 435 U.S. 247, 266, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978) (denial

of procedural due process by school board is actionable for nominal damages without proof of actual injury); and *Willis v. City of Chicago*, 999 F.2d 284 (7th Cir. 1993) (where judgment for nominal damages was limited to a recognition that [plaintiff's] constitutional rights were violated "in some unspecified way," plaintiffs are not entitled to attorneys' fees). Plaintiff further contends that in the long run judicial economy is served by obtaining the deterrent value of a jury determination of liability and the *res judicata* effect of a judgment against the City.

Plainly, the arguments the City makes have been accepted by other judges of this court in well-reasoned rulings. The issue here is whether something in this case would distinguish those rulings or whether plaintiff presents a more persuasive argument for the opposite result. Plaintiff's first argument, that the Rules require the City to admit the allegations in order to avoid trial of the issues of fact, is unfounded. Consent judgments are a device to avoid trial and can certainly be entered without findings of fact having been made. *Cf. La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir.1990) (citing the general rule that "consent judgments ordinarily support claim preclusion but not issue preclusion" and stating, "The rationale behind this general rule is that issues underlying a consent judgment generally are neither actually litigated nor essential to the judgment."). Plaintiff's citation to cases such as *Jones*, 856 F.2d 985, in support of her argument that she is entitled to a trial even if winning has no practical significance, is of scant help because the question presented there was whether the evidence supported the verdict against the City, not mootness, so one is not free to divine from that case whether it was necessary or appropriate to try the *Monell* case in the first place. And although *Carey* and *Willis* support the important principle that the City should be held accountable for an unconstitutional policy, there was practical significance to the trial of both claims that are not present here. In *Carey*, plaintiffs had no

4

quantifiable damages against any defendant in an individual or official capacity. Without a ruling that nominal damages could be awarded for deprivation of procedural due process, there would have been no vindication of "the importance to organized society that [absolute] rights be scrupulously observed." *Carey*, 435 U.S. at 1054. In *Willis*, although the principle of *Carey* was acknowledged, the court ruled that plaintiffs were not entitled to shift attorney's fees to the City for litigating the claim. *See also Alliance to End Repression*, 820 F.2d 873 (holding noted above). At best, the cases plaintiff cites are consistent with denial of the City's motion but do little to augur for it.

Plaintiff's argument that judicial economy is ultimately served by the deterrent effect of a jury verdict against the City is of some persuasive force as is her argument that the bar of *res judicata* (actually, issue preclusion) is lost. See *Medina v. City of Chicago*, 100 F. Supp. 2d 893 (N.D. Ill. 2000) (". . . [A] judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its policies and customs.") (Judge Kennelly); *Lopez v. City of Chicago*, 2002 WL 335346, at *3 (N.D. Ill. 2002) (Judge Darrah) ("[A] finding of liability against individual public employees, as compared to a finding of liability against a municipality, may decrease the likelihood of the municipality's acting to prevent future violations when that municipality is, or is not, named in a judgment."); *Montana v. United States*, 440 U.S. 147, 153, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979), *citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 58 L. Ed. 2d 552, 99 S. Ct. 645 ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."). Whether opprobrium adds more than marginally to the deterrent effect of a substantial judgment is

probably a question for the ages (especially where an unconstitutional policy results in repeated law suits over the same issues), at least here, unlike both *Medina* and *Lopez,* the City has consented to a judgment, so the contingent liability of the City is assured.[2]

Of course, analysis of this issue would be very different had *Monell* not been followed by decisions eliminating municipal liability for attorney's fees where municipal liability adds no monetary value to the plaintiff's recovery, as in *Willis* and *Alliance to End Repression*, and liability for punitive damages, *City of Newport* v. *Fact Concerts, Inc.* 453 U.S. 247, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981). As it is, however, there is no dispute to be resolved between plaintiff and the City. In the final analysis, the plaintiff gains nothing in her pocket from a judgment against the City; neither do her attorneys. There is no case or controversy. The court acknowledges that unconstitutional municipal conduct is more likely to elude justice as a result of decisions like this, but it does not see a principled basis to deny the City's motion.

---

[2] In *Medina*, 180 F. Supp. 2d at 896, the court observed that there could be a scenario in which the individual defendants are found immune but the City could be liable:

> [W]hen a plaintiff loses his claim against a police officer based on qualified immunity, he can still recover against the municipality if he can prove a constitutional deprivation caused by a municipal policy or custom. In this situation, bifurcation will not avoid a second trial, and that second trial (of the *Monell* claim) is guaranteed to be in significant part duplicative of the trial of the claims against the individual officers.

Although the defendant officers have pled qualified immunity, plaintiff does not make this argument, and this court is at a loss to imagine how the scenario could occur in this case, where the facts alleged clearly state a claim for excessive force, and the right to be free from excessive force is clearly established. *See Saucier* v. *Katz*, 533 U.S. 194, 194-95, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001) (setting out analytical framework for assessing qualified immunity).

## CONCLUSION

For the reasons stated above, the motion to bar trial of policy issues on section 1983 claim against the City [#29] is granted. Additionally, the City's motion to strike plaintiff's expert report and to bar the expert's testimony [#66] is granted because such evidence was relevant only to plaintiff's *Monell* policy claim. The defendant police officers' motion to bifurcate plaintiff's claims against defendant police officers from plaintiff's *Monell* policy claim against the City [#80] is denied as moot.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 10, 2006