

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TAMMY FAYE GRANT, on her own behalf ) 
and as Administrator for the Estate of ) 
CORNELIUS WARE, Deceased, ) 
                                         ) 
        Plaintiff, )      **No. 04 C 2612**
                                         ) 
        vs. )      **Judge Joan H. Lefkow**
                                         ) 
CITY OF CHICAGO and CHICAGO POLICE ) 
OFFICERS ANTHONY BLAKE, ) 
JOHN CLEGGETT, RICHARD GRIFFIN, and ) 
TIFFANY WALKER, ) 
                                         ) 
        Defendants. ) 
                                         )

## RULINGS ON MOTIONS *IN LIMINE*

Presently before the court are the motions *in limine* of Tammy Faye Grant, the plaintiff administrator of the estate of her son, Cornelius Ware, and defendants City of Chicago and Anthony Blake (collectively, "defendants").[1] Motions *in limine* should be granted only if the evidence is clearly not admissible for any purpose. *See Hawthorne Partners* v. *AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). If there is any question on the issue, the court should reserve ruling on questions of admissibility until they actually arise in the context of the trial rather than barring the evidence before trial. *See id.* at 1401. With that in mind, the court addresses each motion *in limine* below.

---

[1]At a later date, the court will issue an opinion on defendants' motions *in limine* regarding the investigation of the incident [#106], to bar plaintiff's expert Dennis Waller's Report and to bar testimony related to this report [#107], and to bar plaintiff's expert Joye M. Carter's Reports and to bar testimony related to these reports [#108]. The court has not yet had the opportunity to consider these motions.

## PLAINTIFF'S MOTIONS IN LIMINE

I.     **Plaintiff's First Motion *in Limine* to Dismiss Certain Defendants**

Plaintiff moves to dismiss Officers Cleggett, Griffin, and Walker, leaving Officer Anthony Blake as a defendant for trial. Defendants do not object to this motion but request that the dismissal be with prejudice. Plaintiff has not objected to defendants' request. Accordingly, the court grants plaintiff's first motion *in limine* and dismisses Officers Cleggett, Griffin, and Walker as defendants from this action with prejudice.

II.    **Plaintiff's Second Motion *in Limine* to Bifurcate Liability and Damages at Trial**

Plaintiff moves the court to bifurcate the trial: first having a liability phase, then having a short damages phase, if necessary. It is within this court's discretion to bifurcate a trial provided that the bifurcation (1) serves the interest of judicial economy or is done to prevent prejudice to a party; (2) does not unfairly prejudice the non-moving party; and (3) does not violate the Seventh Amendment. *Krocka* v. *City of Chicago*, 203 F.3d 507 at 515 (7th Cir. 2000), *citing Houseman* v. *U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999); Fed. R. Civ. P. 42(b). In this instance, the court finds that bifurcation is appropriate and grants plaintiff's motion.

Although the court generally disfavors bifurcated trials, defendants have stated that they intend to offer evidence regarding Ware's background, including his prior arrests and convictions, his gang affiliation, and his relationship to his family members, including evidence that Ware's older brother accidently shot him in the face while they were children and that Ware retaliated against his brother by cutting him, because of its relevance to damages. Defendants also intend to offer evidence regarding drugs found in Ware's pants after the shooting, arguing that narcotics evidence is relevant to the issue of damages. None of this evidence is relevant to plaintiff's claim of excessive

2

force, which would require the jury to determine whether Officer Blake's use of deadly force was reasonable under the totality of the circumstances known to him at the time of the shooting. Rather, the introduction of such evidence would severely prejudice plaintiff. *See Sherrod* v. *Berry*, 856 F.2d 802 at 805 (7th Cir. 1988) (*en banc*) ("The reception of evidence or any information beyond that which [the police officer] had and reasonably believed at the time he fired his revolver is improper, irrelevant, and prejudicial to the determination of whether [the officer] acted reasonably 'under the circumstances.'").

While witnesses for both parties may be inconvenienced by being required to appear during both the liability phase and damages phase, the City's claim of prejudice is that there will be testimony that the decedent died eighteen days after the shooting. The City asserts that if the trial is bifurcated, the jury would be left to speculate about what happened during those eighteen days, which would evoke a sympathetic response in the liability phase of the trial. Plaintiff represents, however, that the jurors would only need to hear testimony that Ware was shot and killed, which is why he is unavailable to testify; it is not necessary for the jury to hear testimony that eighteen days elapsed between the shooting and Ware's death. Defendants would suffer no prejudice in that regard, and defendants raise no Seventh Amendment concerns in response to plaintiff's motion.

The court will hold plaintiff to her representation that if she succeeds in proving defendants' liability, a short damages phase of one day or less would follow. Thus, plaintiff's motion is granted.

## III. Plaintiff's Third Motion *in Limine* to Bar Certain References to Facts Not Known at the Time of the Shooting

Plaintiff moves to preclude defendants from offering evidence as to information unknown by Officer Blake at the time he shot Ware but which he later learned. More specifically, plaintiff

3

moves to bar all evidence and references to anything having to do with the terminated car chase which was not known to Officer Blake; the drugs allegedly in Ware's pocket; ownership of the car; the handgun that was allegedly thrown from the car before Officer Blake confronted Ware, including but not limited to the fact that the gun may or may not have been involved in a prior crime; and the fact that Ware was on bond at the time of the shooting. Plaintiff argues that the introduction of or reference to such evidence would violate well-settled law excluding references to facts learned by an officer after the fact because they impermissibly taint the jury's consideration of whether the force employed by the officer was reasonable under the circumstances confronting the officer. For the reasons stated below, the court grants this motion.

Plaintiff brought this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that Officer Blake violated Ware's constitutional rights in effecting an arrest by using excessive force that caused Ware's death. Claims of excessive force, including claims of deadly force resulting from a seizure, are analyzed under the Fourth Amendment's objective reasonableness standard. *Deering* v. *Reich*, 183 F.3d 645, 650 (7th Cir. 1999), *citing Graham* v. *Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "Reasonableness depends on the information the officer possesses prior to and at the immediate time of the shooting; the 'knowledge, facts and circumstances known to the officer at the time he exercised his split-second judgment as to whether the use of deadly force was warranted.'" *Id.*, *quoting Sherrod*, 856 F.2d at 805. "Reasonableness is evaluated from the officer's perspective at the time, not with 20/20 hindsight." *Id.*, *citing Graham*, 490 U.S. 386. Thus, the relevant inquiry in the instant matter is what Officer Blake knew prior to and at the time he shot Ware, not what other officers knew at the time or what was learned after the incident.

According to defendants, while on patrol, Officer Blake was listening and monitoring radio

4

traffic when he learned of a police chase involving a white car. He heard that the driver of a white vehicle who was wanted for homicide was being pursued by other officers. Officer Blake moved into the area of the chase to provide assistance in the event of a foot chase. Officer Blake was not involved in the chase but was aware that other officers had not yet caught the suspect when he observed a white car run a stop sign, proceed southbound on Loomis, and then cross the center line into the northbound lane of traffic. Officer Blake then pulled up near the white car, and he and his partner, Officer Cleggett, exited their vehicle and approached the driver's side door. Seeing that Ware had a gun in his hand, Officer Blake shot Ware. Officer Blake's police report states that the arresting officers observed Ware "commit a traffic violation and after curbing the vehicle, [the arresting officers] approached the vehicle and the above offender pointed a handgun at P.O. Cleggett and P.O. Griffin and was subsequently shot by P.O. Blake for fear of both officers' safety."

At the time he shot Ware, Officer Blake did not know the following: Ware's car had struck several parked cars while eluding police; a mob of people started throwing pieces of lumber at Ware's car claiming "that Dude shot somebody, get him;" Ware stopped and engaged in a drug deal during the chase; Ware threw a handgun out of the window of the car during the chase; Ware had baggies of drugs in his pants; Ware was driving a stolen car; the gun that Ware threw out the window of the car had been used in a shooting a day before the incident; and Ware was out on bond at the time of the incident.[2] Defendants argue that evidence relating to the allegations unknown by Officer Blake at the time of the shooting is relevant to rebut plaintiff's claim that Ware was attempting to surrender and to fill a chronological or conceptual void, and is evidence of Ware's motive and intent

---

[2] The court recognizes that plaintiff disputes the truth and accuracy of many of these allegations, but the court is confining its analysis to the admissibility of the evidence regarding these allegations rather than their truth for purposes of deciding this motion.

for fleeing and eluding the police.[3] Even if evidence relating to these allegations had some relevance in that it makes defendants' version of events more likely than not, it is not admissible because the prejudice to the plaintiff would outweigh the probative value of this evidence to defendants. Such evidence would attempt to justify Officer Blake's actions rather than focus on Ware's actions at the time he was shot. Because Officer Blake was unaware of this information until after he shot Ware, the court will exclude from trial evidence regarding these allegations as irrelevant and prejudicial. *Sherrod*, 856 F.2d at 805 ("Knowledge of facts and circumstances gained after the fact . . . has no place in the trial court's or jury's proper post-hoc analysis of the reasonableness of the actor's judgment.").

This result is supported by the Seventh Circuit's decision in *Palmquist* v. *Selvik*, 111 F.3d 1332 (7th Cir. 1997). *Palmquist* involved a § 1983 claim for excessive force. In responding to a neighborhood disturbance, police officers discovered the decedent yelling incoherently and brandishing a pipe. The decedent was fatally shot after he ignored the officers' repeated orders to the decedent to lay down the pipe and attempted to attack the officers with the pipe. Relying on *Sherrod*, the trial court excluded evidence of the decedent's motive and intent to commit "suicide by police" and evidence of any "death wish" of the decedent, limiting the defense's evidence to the officer's personal knowledge at the time of the shooting. After hearing various accounts of the incident from eyewitnesses, the jury returned a verdict in favor of the plaintiff. The defendants appealed.

On appeal, the defendants argued that the trial court had erred in excluding character

---

[3]Defendants also contend that these allegations are relevant to the issue of damages. The court has addressed the concerns raised by these allegations in its ruling on plaintiff's motion *in limine* to bifurcate the trial.

evidence of the decedent's motive and intent for the purposes of presenting a self-defense claim, to demonstrate that Palmquist was attempting to commit "suicide by police," and to show that the decedent was the sole proximate cause of his being shot. *Id.* at 1339. This evidence included the testimony of witnesses, including decedents' friends, who would have testified that the decedent had suffered from serious alcohol and marijuana problems, as well as from depression and a "mental unraveling." The day before he died, the decedent had informed his neighbor that he would provoke the police to kill him. *Id.* at 1338. Another witness stated that the decedent wanted to die. Shortly before 1 a.m. on the morning of the incident, a police officer observed the decedent driving his motorcycle erratically. *Id.* The decedent failed a field sobriety test. *Id.* A protective pat-down search revealed as plastic bag with marijuana. *Id.* The decedent was charged with driving under the influence, drug possession, and various traffic offenses. *Id.* After his release from police custody on bond at approximately 3:30 a.m., the decedent returned to his home and began to "howl at the moon," to scream at himself, to imitate the "Three Stooges," to talk to himself, and to rant about microwaves. *Id.* Two of his neighbors stated that the decedent did this because he wanted someone to call the police. *Id.* The neighbors also testified regarding decedent's other erratic behavior. *Id.* At the time of the shooting, none of the police officers involved were aware of this information about the decedent.

The Seventh Circuit held that the trial court correctly relied on *Sherrod* in excluding this evidence because "[t]he excluded evidence would have shifted the jury's attention from [the decedent's] behavior at the scene, which is material in judging the objective reasonableness of Sergeant Selvik's use of force, to information not possessed by Selvik, such as [the decedent's] mental state and his physical behavior before the encounter." *Id.* at 1340. The court explained that

7

the jury needed to know what the officer knew and saw when he fired his weapon. *Id.* at 1341. At issue was the reasonableness of the officer's actions, not the victim's. *Id.* And "[h]indsight should not have influenced the jury's determination any more than it should have ratified Selvick's response to the situation." *Id.*

In accordance with *Palmquist*, defendants may present evidence as to what Officer Blake knew or saw at the time of the incident.[4] For example, he knew that there was a police chase involving a white car; he observed a white car in the same area as the police chase commit traffic violations; he pulled the white car over possibly suspecting, but not knowing, that it was the same car as the white car in the police chase. There is no chronological and conceptual void, as argued by defendants. The court will exclude from trial evidence regarding Ware's conduct or purported motive or intent to flee of which Officer Blake was unaware at the time of the shooting as it would be unfairly prejudicial to give the jury the benefit of hindsight in allowing the jurors to know more than what Officer Blake knew at the time of the shooting.

## IV. Plaintiff's Fourth Motion *in Limine* to Exclude Certain Expert Opinions of Vincent DiMaio

Plaintiff moves to exclude defendants from offering certain opinions of defendants' expert, Dr. Vincent DiMaio: (1) that it cannot be determined with certainty whether the wound on the back of Ware's right hand is an entrance or exit wound because it was surgically debrided; and (2) that

---

[4]Defendants argue that *Palmquist* is "factually misplaced" because defendants are not advancing a theory that decedent committed suicide by police. While defendants are not offering the theory that Ware committed suicide by police, they, like the defendants in *Palmquist*, seek to introduce evidence as to the decedent's motive and intent based on information of which the police officer was unaware at the time of the shooting. The relevant inquiry, however, is what Officer Blake saw or knew at the time of the shooting, and *Palmquist* is directly on point in this regard.

Ware would have been able to hold the gun after being struck in his right hand with a bullet.[5]
Plaintiff does not challenge Dr. DiMaio's qualifications as an expert but argues that his entry wound
opinion constitutes inadmissible speculation because it is unsupported by any evidence that the
wound on Ware's right hand was surgically debrided. Plaintiff further argues that Dr. DiMaio's
opinion that Ware would have been able to hold the gun is inadmissible because it is merely a
conclusion lacking support or an explanation sufficient to survive *Daubert* v. *Merrell Dow Pharms.,
Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). For the reasons stated below, the
court grants this motion.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness
testimony. *See Daubert*, 509 U.S. at 588-89; *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137,
119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). In *Daubert*, the Supreme Court held that Rule 702
requires trial judges to "ensure that any and all scientific testimony or evidence admitted is not only
relevant, but reliable." *Wintz* v. *Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997). To admit
expert testimony, the court must find that the expert is proposing to testify to (1) valid scientific,
technical, or other specialized knowledge, and (2) his testimony will assist the trier of fact to
understand or determine a fact in issue." *Durkin* v. *Equifax Check Servs., Inc.*, 406 F.3d 410, 420
(7th Cir. 2005), *citing Ammons* v. *Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). The

---

[5]The relevant portion of Dr. DiMaio's expert report states:

Wound #5 is a through and through wound of the back of the right hand. There is a gunshot wound of the base of the
right thumb and another of the skin of the back of the hand overlying the "knuckle" of the index finger. It cannot be
determined with any certainty which is the entrance and which the exit. The wound overlying the "knuckle" is
circular and punched out, strongly resembling the appearance of an entrance. Examination of the other wounds in
the body, however, reveals extensive fibrosis of the rims of these wounds due to the healing process. This is not
present in the wound over the "knuckle". This strongly suggests that this wound has been surgically debrided, and
thus, does not present its original appearance. This is a minor wound and would not have interfered with his ability
to hold or fire a handgun. Bleeding from these wounds would not necessarily have resulted in blood being deposited
on the gun since they were on the back of the hand and not the palmer surface which is in contact with [the] gun."

first prong tests the reliability of the testimony; the second prong tests its relevance. *Frey* v. *Chicago Conservation Ctr.*, 119 F. Supp. 2d 794, 497 (N.D. Ill. 2000).

Some of the factors useful in analyzing the reliability of an expert's testimony are (1) whether the theory is based on scientific or other specialized knowledge that will assist the trier of fact and can be tested; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error and the existence of standards controlling the technique's operation; and (4) the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community. The objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Clark* v. *Takata Corp.*, 192 F.3d 750, 756 (7th Cir. 1999). The proponent of the testimony bears ths burden of proving that their proffered testimony meets these requirements. *Frey*, 119 F. Supp. 2d at 797.

### A.    Surgical Debridement

Plaintiff asserts, and defendants concede, that there is no evidence in Ware's medical records that surgical debridement of Ware's right hand occurred. Defendants argue that the absence of notations of surgical debridement in Ware's medical records does not mean that debridement did not occur. Defendants do no not dispute, however, that plaintiff deposed Ware's treating physicians and asked these doctors whether there was any basis to conclude that surgical debridement had been performed and that these doctors answered in the negative. Defendants have not offered any evidence that surgical debridement occurred. Plaintiff argues that in the absence of such evidence, no expert, including Dr. DiMaio, may speculate that perhaps debridement occurred, and, if it hypothetically did occur, that debridement may explain the expert's observations of the exit wounds

10

on Ware's hand. The court agrees.

The wounds on Ware's right hand may be consistent with wounds that have been surgically debrided, and Dr. DiMaio's observations in this regard may be proper. Dr. DiMaio's opinion, however, that it is indeterminate whether the wound on the back of Ware's right hand is an entrance or exit wound because it was surgically debrided, is unsupported speculation in the absence of evidence that the wound was debrided.[6] Defendants argue that plaintiff's argument goes to the weight of the evidence and not its admissibility and that plaintiff will have the opportunity to cross-examine and present contrary evidence in an effort to refute Dr. DiMaio's opinions. "[W]hile it is true that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but otherwise admissible evidence, such safeguards are not a basis for admitting otherwise inadmissible evidence." *Reed* v. *City of Chicago*, No. 01 C 7865, 2006 WL 1543928, at *3 (N.D. Ill. June 1, 2006) (internal quotations and citations omitted). Dr. DiMaio's opinion as to the wounds on the back of Ware's hand is inadmissible speculation, and the existence of cross-examination cannot render this opinion otherwise admissible for the purpose of trial. As such, the court will exclude from trial Dr. DiMaio's opinion regarding the wounds on the back of Ware's right hand because it lacks sufficient indicia of reliability under Rule 702, Fed. R. Civ. P. *See Weisgram* v. *Marley Co.*, 169 F.3d 514, 519 (8th Cir. 1999) ("Freeman's qualification as a fire investigator did not give him free rein to speculate before the jury as to the cause of the fire by relying on inferences that have absolutely no record support . . . and the court abused its discretion in allowing the jury to hear this testimony.").

---

[6]Notably, Dr. DiMaio offered his opinion on debridement before the parties took the depositions of all of the treating physicians. Thus, he did not know when he offered his opinion whether the wound was surgically debrided.

## B.    Ware's Ability to Grip the Gun

In his expert report, Dr. DiMaio's analysis of Ware's ability to continue to hold the gun after being shot in the hand consists of the following conclusion: "This is a minor wound and would not have interfered with his ability to hold or fire a handgun." Bare conclusions and naked opinions fail to satisfy the first prong of the expert opinion admissibility test. *Id.*, *citing Fuesting* v. *Zimmer, Inc.*, 421 F.3d 528 at 536 (7th Cir. 2005); *McMahon* v. *Bunn-O-Matic*, 150 F.3d 651, 658 (7th Cir. 1998).

At his deposition, Dr. DiMaio explained that although Ware's thumb and index finger were broken, "the bones were relatively still in place" and that Ware would have been able to pull the trigger because pulling a trigger is "mostly a muscular phenomena." DiMaio Dep. at 27. Ignoring Dr. DiMaio's failure to include the basis of this opinion in his expert report, this explanation does not account for his opinion that Ware would have been able to hold the gun. Dr. DiMaio also offered the analogy to a fractured leg: "Even with a fractured leg, [an individual] can still walk on the fracture as long as there's not gross displacement," *id.*, but he did not state or cite to any authority for this analogy. The court is not convinced at this time that Dr. DiMaio's opinion that Ware would have been able to hold a gun after being shot in the hand is sufficiently reliable to be admitted at trial.

At plaintiff's request, the court will conduct a *voir dire* before allowing Dr. DiMaio to testify at trial as to his opinion that Ware would have been able to hold a gun after being shot in the hand. The court will exclude evidence testimony regarding this opinion until the court is satisfied that it meets the *Daubert* standard.

12

**V.      Plaintiff's Fifth Motion *in Limine* to Bar Any Reference to the Fact that Cornelius was Previously a Victim of Gun Violence**

Plaintiff moves to exclude evidence and testimony that Ware was previously a victim of gun violence pursuant to Rule 403, Fed. R. Evid.  The court grants plaintiff's motion.

When he was eighteen years old, Ware was shot seven times.  One of the bullets injured his spinal cord, causing paralysis.  Plaintiff argues that Ware's paralysis is relevant and admissible but the reason why Ware was paralyzed is inadmissible because it paints an unfairly prejudicial picture that allows a jury to speculate impermissibly that Ware may have been someone whom a police officer would more be justified in shooting.  Defendants argue that the fact that Ware was shot on a previous occasion shows motive, intent, and plan for carrying a weapon at the time of the incident and that it is relevant to the issue of damages.

As explained in the court's ruling on plaintiff's third motion *in limine*, the relevant inquiry in the instant matter is what Officer Blake knew prior to and at the time he shot Ware, not what other officers knew at the time or what was learned after the incident.  Evidence that Officer Blake was aware of Ware's paralysis is relevant to whether Officer Blake acted reasonably under the circumstances.  Ware's motivations, intentions, or plan to carry a gun, however, are not relevant to this determination, even if such motivations, intentions, or plan can be established by evidence that he had been shot previously.  Moreover, any limited relevance is substantially outweighed by its prejudice to plaintiff, as it creates an inference that Ware was violence-prone and that he was someone that the police officer might be more justified in shooting.  With regard to damages, evidence of Ware's paralysis is relevant to establishing his quality of life, future health, his ability to interact with his family and others, and the ability of Ware's family to care for him.  The cause

13

of his paralysis is not relevant to this purpose. The court, therefore, grants plaintiff's motion.

## VI.    Plaintiff's Sixth Motion *in Limine* to Bar the Medical Examiner from Providing Undisclosed Opinion Testimony

Plaintiff moves to preclude the medical examiner, Dr. Mitra Kalclkar, from offering

undisclosed opinion testimony. Defendants concede this motion provided that a similar exclusion

is also applied to Ware's treating physicians, Dr. James Doherty, Dr. William J. Benedict, Dr.

Dickerman, Dr. Faraooq, Dr. Jula Veerapong, Dr. James Stone, Dr. Vishnu Madireddy, Dr. Gary

Merlotti, and Dr. Donald Fishman. The court grants plaintiff's motion. Plaintiff is likewise barred

from introducing previously undisclosed expert testimony from any of Ware's treating physicians.

## VII.   Plaintiff's Seventh Motion *in Limine* to Bar Any References to Tattoos on Cornelius' Body
## VIII.  Plaintiff's Eighth Motion *in Limine* to Bar References to Any Allegations that Plaintiff or Any Other Witness was Ever in a Gang

Because plaintiff's seventh and eighth motions *in limine* are intertwined, the court will

consolidate its analysis of these motions. In her seventh motion *in limine*, plaintiff moves to exclude

evidence and testimony that Ware had certain tattoos on his body, including at least one symbol that

may possibly be associated with a gang, arguing that such evidence is unfairly prejudicial. In her

eighth motion *in limine*, plaintiff moves to exclude references to any allegations that plaintiff or any

other witness was ever in a gang. For the reasons stated below, the court grants plaintiff's motions.

At the time of his death, Ware had three tattoos: an inverted pitchfork with the name "Neil"

on his left upper arm; on the anterior aspect of his right forearm, "Bond by blood NN will kill crazy

Ware;" and an inverted pitchfork on his left thigh. Defendants assert that "[t]hese are clearly gang

symbols." Defendants' Response to Plaintiff's Seventh Motion *in Limine* at 2. The Chicago Police

officers who completed the police report regarding the shooting checked the box marked "gang" and

14

wrote "blackstone."

Defendants argue that evidence of Ware's membership in a gang, as evidenced by the tattoos, is relevant because it explains why Ware would be carrying a gun at the time he was shot and why he would point a gun at a police officer. As explained previously, evidence relevant to the issue of liability is evidence that establishes what Officer Blake knew at the time of the shooting. Whether Ware had a gun and whether he pointed the gun at the officers is likewise relevant. Ware's motivations in having a gun and pointing a gun, however, are not relevant to a liability determination because Officer Blake was unaware of Ware's tattoos or purported gang membership at the time of the shooting.

Even assuming that such evidence is relevant to a liability determination, the probative value of such evidence would be substantially outweighed by its prejudice to plaintiff, particularly where the evidence of Ware's membership is quite limited.[7] *See Charles* v. *Cotter*, 867 F. Supp. 648 at 658 (N.D. Ill. 1994) ("Identifying [plaintiff in a § 1983 action] as a gang member is unfairly prejudicial insofar as it encourages the inference that [plaintiff] is an evil and menacing person."). *See also United States* v. *Irvin*, 87 F.3d 860 at 865 (7th Cir. 1996) ("Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict.").[8] Moreover, defendants explicitly assert that such evidence is relevant to explaining why Ware pointed

---

[7] The evidence offered by defendants in support of Ware's purported gang membership amounts to little more than a tattoo and hearsay statements.

[8] Although *Irvin* was a criminal matter, the court finds the Seventh Circuit's discussion of the admissibility of gang evidence and the negative connotations associated with gangs instructive in the present matter.

15

his gun at a police officer. In other words, because Ware was a member of a gang, he had a propensity to act lawlessly. The court will not permit defendants to argue or offer evidence of a propensity to commit bad acts based on Ware's purported membership in a gang.

Defendants argue that the admission of evidence of Ware's membership in a gang is relevant to the issue of damages because it shows what Ware would have been able to contribute financially and emotionally. Again, however, the probative value of such evidence is substantially outweighed by its prejudice to plaintiff as it would invite the jury to award a lesser amount of damages on an impermissible basis, *e.g.*. because of the jurors' negative feelings toward gangs. Accordingly, the court grants plaintiff's seventh and eighth motions *in limine*.

**IX.** **Plaintiff's Ninth Motion *in Limine* to Bar References to Certain Irrelevant Subjects**

Plaintiff moves to exclude as irrelevant any references to plaintiff's prior attorneys; to an incident in which Ware was shot by his brother with his mother's gun; and to purported "shootings in the park." Plaintiff also moves to bar defendants from asking a question which has no foundation. As stated below, plaintiff's motion is granted.

**A.** **Plaintiff's Prior Attorneys**

Defendants have represented that they do not intend to make any references to plaintiff's prior attorneys. This portion of the motion is granted.

**B.** **Accidental Shooting**

When Ware was thirteen years old, his brother, Willie, accidentally shot him in the face with their mother's gun. There were no lasting or permanent injuries, and it played no part in Ware's death. Plaintiff argues that evidence relating to this incident must be barred because of the risk of unfair prejudice and lack of probative value. Defendants argue that this incident is relevant to the

16

issue of damages because there is evidence that indicates that this incident changed Ware's relationship with Willie to the extent that Ware cut Willie so that Willie could experience the pain that Ware suffered when he was shot. As a result, defendants argue that this incident is probative of strained family relationships, which is relevant to plaintiff's loss of society claim.

To the extent that plaintiff suggests during the damages phase of the trial, if necessary, that Ware and Willie had an ideal or otherwise perfect relationship, the court will allow defendants to introduce admissible, non-hearsay evidence concerning the incident to rebut plaintiff's assertion. Otherwise, the probative value of an event that occurred many years before Ware's death on his relationship with his family at the time of his death is minimal and is substantially outweighed by its prejudice to plaintiff. Accordingly, evidence related to this incident is excluded from trial until further order of court.

## C.     Purported Shootings in a Nearby Park

Plaintiff moves to exclude evidence that there were shootings in a park near plaintiff's home. Defendants have proferred no evidence that Officer Blake was aware of the purported shootings at the time he shot Ware, and it is his knowledge of the shootings that is relevant. What otherwise witnesses knew about the shootings is irrelevant to the issue of whether Officer Blake used reasonable force under the circumstances confronting him at the time of the shooting and will be excluded. *See, supra*, Ruling on Plaintiff's Third Motion *in Limine*. Until defendants make a sufficient proffer to the court, outside the presence of the jury, that Officer Blake was aware of the purported shootings at the time he shot Ware, evidence related to this incident is excluded from trial.

## D.     Question Without Foundation

Plaintiff also moves to preclude defendants from asking a question without a foundation.

17

Specifically, plaintiff moves to preclude defendants from asking witnesses whether they know if Ware had a gun in the car because none of the witnesses were in the car at the time of the shooting and, therefore, none of them know if he had a gun. While questioning witnesses, both parties must lay a proper foundation for their questions. Defendants have not proffered any evidence that any of the witnesses knew whether Ware had a gun in the car or establishing the foundation for such a question. The court assumes at this point in time that defendants do not have any such evidence. Until defendants make a sufficient proffer to the court, outside the presence of the jury, laying a foundation for this line of questioning, defendants are barred from asking witnesses whether they know if Ware had a gun in the car.

## X. Plaintiff's Tenth Motion *in Limine* to Bar Undisclosed Witnesses from Testifying at Trial

Plaintiff moves to bar certain undisclosed witnesses from testifying at trial: Alejandro Almazan, Ronald Evans, William Callaghan, James Dillon, Sharon Barnes, William Filipiak, Julie Champagne, Michael Block, Lonnie Hardy, Joseph Andruzzi, Marcalla Schele, Paul Spagnola, Richard Harrison, and John Fassel. The court grants this motion.

In her motion *in limine*, plaintiff details her efforts to learn the identities of the witnesses whom defendants intend to call at trial. Defendants do not dispute plaintiff's recitation of the record in this regard. On April 18, 2005, the parties appeared before Judge Kocoras. Plaintiff's counsel pointed out that defendants had "disclosed" more than fifty names of potential witnesses because their Rule 26(a)(1) disclosures basically listed every person whose name appeared in the documents. Plaintiff had given defendants notice that she would depose each of these witnesses whom defendants failed to formally withdraw as a potential trial witness. In light of the fact that the City

18

did not want to produce fifty witnesses for depositions and that plaintiff did not want to take these depositions, Judge Kocoras ordered the parties to meet face to face by the end of the month and "get over the lists of names of people who realistically have something to say about what happened in this case." 4/18/05 Tr. at 6.

Despite repeated requests from plaintiff's counsel to defense counsel for defendants' list of actual trial witnesses and formal noticing of all fifty-four names for depositions, defendants failed to produce many of the witnesses and did not provide a binding list of witnesses. Finally, on August 10, defendants sent a letter to plaintiff stating, "[i]n response to the Court's order, we would like to inform you that Defendants intend to call as witnesses anyone who has been deposed as of today's date," as well as fourteen additional people listed by name and address. Plaintiff's Exhibit OO, August 10, 2005 Letter. Plaintiff deposed those additional people.

Defendants' Final Pretrial Witness List contains fourteen new names of individuals who were neither deposed nor included on defendants' court-ordered list. Defendants state that they are not required to disclose witnesses who will be called solely for the purpose of impeachment, Fed. R. Civ. P. 26(a)(3), or to supplement disclosures that have otherwise been made known to the other parties during the discovery process, citing Fed. R Civ. P. 26(e)(1). While these assertions are true generally, Judge Kocoras' order did not exclude witnesses offered solely for impeachment purposes, and defendants offer no explanation for their failure to comply with Judge Kocoras' order. Plaintiff undertook all reasonable efforts to ensure that she would not be ambushed at trial, including obtaining a court order requiring the parties to disclose those individuals "who realistically have something to say about what happened in this case." And at this point on the eve of trial, plaintiff would not have sufficient time to depose these additional fourteen witnesses while preparing for trial.

19

As such, the court will hold defendants to their list of witnesses as specified in their August 10, 2005 letter. *Santiago* v. *Furniture Chauffeurs, Piano Movers, Packers, and Handlers Local 705*, No. 99 C 2886, 2001 WL 11058, at *7 (N.D. Ill. Jan. 4, 2001) ("Civil litigation is not a game of hide-the-ball."). Defendants may only call as witnesses anyone who had been deposed as of August 10, 2005 and those fourteen additional people whose names and addresses appeared on that letter.

## XI. Plaintiff's Eleventh Motion *in Limine* to Bar References to Defendants' Exhibit 49 ("Probation Investigative Report")

The court grants plaintiff's eleventh motion *in limine* to bar references to defendants' exhibit 49, which is an exhibit comprising an "Investigative Report" compiled by the Cook County Adult Probation Department. Because P.O. Julie Champagne, the author of the report, cannot testify due to defendants' failure to timely disclose her as a witness, there is no foundation for the admission of the report at trial.

## XII. Plaintiff's Twelfth Motion *in Limine* to Bar References to Defendants' Exhibit 55 ("IDOC Records")

Plaintiff moves to bar all reference to defendants' exhibit 55, which consists of approximately 400 pages of documents relating to Ware's detention in a juvenile facility. Plaintiff's motion is granted as stated below.

Plaintiff argues that references to this exhibit should be barred because placing 400 pages of unrelated miscellaneous records on a Final Pretrial Order as a group exhibit prevents plaintiff from meaningfully objecting to any particular document, pretrial or otherwise, outside of the jury's presence. Plaintiff further argues that there is no foundation for any of these documents as there is no foundation witness for any of the hearsay within the documents.

The court is troubled by defendants' failure to specifically identify which documents within

20

exhibit 55 they intend to use at trial because each document will need to be evaluated separately for its admissibility outside the presence of the jury before defendants may ask any witness about the document, refer to the document, or otherwise attempt to offer the document into evidence. This, in turn, will lead to numerous sidebars and delays during trial.

More importantly, defendants have not suggested how it intends to circumvent the hearsay problem with the majority of these documents. Defendants have suggested that plaintiff gave certain statements that may be used as party-opponent admissions, but defendants have not demonstrated the admissibility of the documents that purport to establish what decedent contributed to his family, what he was likely to contribute in the future, his occupational abilities, and his industry. It appears that most of the documents will be excluded because they are inadmissible hearsay. Without seeing any of them, however, the court cannot determine conclusively that they must be excluded.

In order to facilitate an orderly trial, the court directs defendants to identify with specificity for plaintiff which documents in exhibit 55 they intend to offer during their case in chief no later than fourteen days prior to the start of trial. Before referencing any of these documents at trial, even for purposes of impeachment, defendants must first notify the court and opposing counsel outside the presence of the jury of its intention to introduce or otherwise reference the document and demonstrate its admissibility.

## XIII. Plaintiff's Thirteenth Motion *in Limine* to Bar References to Cornelius' Prior Arrests and Conviction

Plaintiff moves to bar all references to Ware's prior arrests and his convictions, arguing that such evidence is irrelevant and unduly prejudicial.[9] Since Ware is deceased, he will not be testifying

---

[9]Plaintiff also seeks to exclude evidence of the fact that Ware was on bond for the alleged robbery at the time he was killed. The court already excluded this evidence in its ruling on plaintiff's third motion *in limine*.

21

as a witness. His credibility is not at issue. Defendants argue, however, that the court should allow defendants to offer evidence of Ware's prior arrests and convictions because they are relevant on the issue of damages and to rebut plaintiff's allegation of a planted gun. This motion is granted in part and denied in part.

Ware's juvenile record consists of convictions for delinquency for attempted theft of an auto and aggravated battery on October 22, 1996 and for possession of a controlled substance on March 25, 1997.

As an adult, Ware was arrested for gambling on February 5, 1999. On April 11, 2000, Ware was charged with unlawful use of a firearm and subsequently convicted. On April 14, 2000, Ware was arrested for armed robbery with a firearm. On March 27, 2002, Ware was arrested for possession of marijuana, a charge which was stricken with leave to reinstate.

## A. Ware's Arrests

With regard to Ware's arrests that did not result in convictions, the court agrees with plaintiff that the arrests are not admissible for any purpose. Defendants argue that Ware's arrests are relevant to the issue of damages because they show what Ware contributed to his family, what he was likely to contribute in the future, his occupational abilities, and his industry. The court finds the probative value of these arrests, in the absence of convictions, to be negligible and significantly outweighed by the prejudicial nature of this evidence. *See Brandon* v. *Village of Maywood,* 179 F. Supp. 2d 847, 853-55 (N.D. Ill. 2001) (in § 1983 action, the court excluded evidence of plaintiff's prior arrest because the potential for unfair prejudice to the plaintiff outweighed any probative value of that

22

evidence).[10] It also appears that no witness can prove up the arrests at issue.

Defendants argue that they would not offer Ware's arrests as propensity evidence. They assert, however, that the facts thatWare was arrested with a gun on one occasion and used a gun on another occasion are evidence of Ware's *modus operandi*, motive, intent and plan to carry a weapon. As stated previously, Ware's motivations, intentions, or plans are irrelevant to the issue of liability; what is relevant is what Officer Blake knew at the time of the shooting. Moreover, evidence of an individual's possession of a gun on two occasions is hardly sufficient to establish his *modus operandi*. Nor does it follow that because an individual possessed a gun on two occasions, he intended to carry a gun on a third occasion or that it was his habit or routine to carry a gun. Accordingly, the court will exclude evidence of Ware's arrests.

## B.    Ware's Juvenile Record

The court also concludes that Ware's juvenile convictions and juvenile record are irrelevant to any issue at trial. While defendants argue that Ware's juvenile record is relevant to damages because it would allow the jury to consider what Ware would contribute to his family based on what they know about his past, the conviction and other incidents in Ware's juvenile record are nearly ten years old and have a limited probative value on the issue of damages. As plaintiff points out, juvenile records are supposed to be sealed, which would mean that Ware's juvenile record should not have significantly affected his future ability to contribute to his family. Any limited probative value of this evidence is outweighed by its prejudicial effect. The court will exclude this evidence accordingly. To the extent, however, that plaintiff attempts to portray Ware as someone who would

---

[10] Although defendants take exception to the cases cited by plaintiff in support of her motion *in limine*, the court notes that defendants failed to cite to any authority refuting plaintiff's cases or otherwise demonstrating that plaintiff's arguments in support of this motion fail as a matter of law.

not get into trouble or was a perfect son/brother/friend, defendants may raise this issue again and argue to the court that plaintiff has opened the door for the admission of this evidence.

### C. Ware's Unlawful Use of a Weapon Conviction

Again, in the absence of evidence that Officer Blake knew that Ware had a conviction for unlawful use of a weapon, the conviction is not relevant to the liability determination. As stated above, Ware's possession of a weapon on one occasion is insufficient to establish evidence of Ware's *modus operandi*, plan, or habit. Such evidence will be excluded from the liability phase of the trial.

The existence of a felony conviction is relevant to the issue of damages. To the extent that there is a need for a damages phase, the court will permit defendants to establish that Ware was convicted of a felony for which he received a sentence of community service. It is not necessary for the jury to hear that Ware was convicted of unlawful use of a weapon.

## DEFENDANTS' FIRST SET OF MOTIONS *IN LIMINE*

### I. Motion to Bar the Medical Examiner's Death Certificate and Use of the Term "Homicide"

The motion is granted without prejudice. Unless the plaintiff can demonstrate that the death certificate is needed in order to resolve a fact in dispute, the document is not relevant. (Plaintiff has contended in her second motion in limine that the date of Ware's death is not relevant and the death certificate would certainly reveal it.).

### II. Motion to Bar Evidence of Violation of Chicago Police Department Orders, Rules and Regulations

The motion is denied. Defendants cite ten cases for the unimpeachable proposition that the officers' violation of department rules or regulations does not constitute a constitutional or state law

24

violation,[11] and they argue that such evidence is therefore irrelevant and if admitted highly prejudicial to the defense. Only one of the cases treats the evidentiary question presented. In *Walker v. Saenz*, No. 91 C 3669, 1992 WL 317188 (N.D. Ill. Oct. 27, 1992)(Williams, J.), the court granted a motion in limine on this issue on the basis that introduction of such evidence would be unduly prejudicial to defendants because the jury " might improperly assume that a violation of police regulations also constitutes a Constitutional violation." 1992 WL 317188, at *4.

On the other hand, plaintiff cites *Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N. D. Ill. 2003) (Denlow, J.) (rules are relevant to officer's knowledge and state of mind, and prejudice can be overcome with jury instruction); *Threlkeld v. White Castle Systems, Inc.*, 205 F.Supp. 2d 935, 938-39 (N.D. Ill. 2002) (Bucklo, J.) (evidence of rule violations was relevant to reasonableness of officers conduct and limiting instruction would overcome prejudice); *Charles v. Cotter*, 867 F. Supp. 648, 664 (N.D. Ill. 1994) (Castillo, J.) (evidence could be used only for impeachment and to refresh witnesses' recollection; prejudice overcome by jury instruction). Plaintiff also points to Seventh Circuit Pattern Jury Instruction 7.04, which is a limiting instruction on the issue. The Committee Comment to the pattern instruction, however, explicitly "takes no position on whether or when such evidence should be admitted or excluded," and the cases referenced there, *Shango v. Jurich*, 681 F.2d

---

[11] *Davis v. Scherer*, 468 U.S. 183, 194 (1984) (rejecting argument that violation of rules defeats qualified immunity defense); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (rejecting argument that violation of rule created a genuine issue of material fact as to whether officer's conduct was objectively reasonable; *Pasiewicz v. Lake Co. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) (rejecting argument that officers who lacked territorial jurisdiction to make an arrest acted unreasonably under the Fourth Amendment); and *Kraushaar v. Flanigan*, 45 F.3d 1040, 1048-49 (7th Cir. 1995) (rejecting argument that rule requiring officer to obtain written permission and prepare a report regarding strip search created liberty interest under the Fourth Amendment). These cases, and other cases defendants cite (*Archie v. City of Racine*, 847 F.2d 1211, 1215-18 (7th Cir. 1988) (en banc); *Graham v. Connor*, 490 U.S. 386, 393-95 (1989); *Smith v. Freland*, 954 F.2d 343, 347-48 (7th Cir. 1992), *Abbot v. City of Crocker, Mo.*, 30 F.3d 994, 997-999 (8th Cir. 1994), *Morton v. City of Chicago*, 286 Ill. App. 3d 444, 454 (Ill. App. Ct. 1997); and *Blakenship v. Peoria Park District*, 269 Ill. App. 3d 416, 422-23 (Ill. App. Ct. 1994)), simply stand for the proposition that rule and state law violations do not determine constitutional law; nor do rule violations normally establish or impose a legal duty under state law.

25

1091, 1101 (7th Cir. 1982) and *Doe v. Milwaukee County*, 903 F.2d 499, 502 (7th Cir. 1990), concern whether state procedural protections formed a basis for the existence of a due process right rather than the issue before this court.

In light of the arguments presented, the court concludes that the evidence is one fact that would bear on whether Officer Blake's conduct was reasonable at the time he shot Ware. Presumably Officer Blake will testify as to what he knew, saw, and did at the time. Part of what he knew was rules and regulations governing his conduct. If the officer knew a rule and violated the rule, then he might need further to explain why he violated the rule. The jury could then consider all the facts in assessing whether the officer's conduct was reasonable under the circumstances. The court will give the limiting instruction modified as needed for this case.

### III.     Motion to Bar Evidence of Prior Law Suit and/or Citizens' Complaints Against Defendants and Any Non-defendant Police Witnesses

This motion is granted without objection.

### IV.     Motion to Bar Testimony or Evidence Suggesting That the Defendants May be Indemnified for Compensatory Damages

Ruling is reserved. Plaintiff agrees that this motion may be granted if on condition that defendants do not place their ability to pay in issue. *See Lawson v. Trowbridge*, 153 F.3d 368, 378-80 (7th Cir. 1998) (court abused its discretion after defendants testified to their low net worth in not allowing plaintiff's counsel to rebut by telling the jury who likely would pay). Defendants respond that because the defendant officer is subject to punitive damages on the civil rights claim, his net worth is in issue and should not open the door to evidence of indemnification for compensatory damages. Erroneously stating that *Lawson* construed Wisconsin law when in truth *Lawson* dealt

with a federal evidence issue,[12] defendants argue that the case should not guide the court. *Lawson* is distinguishable in the sense that it did not present the difficulty of protecting the City from prejudice by not revealing to the jury that the officer is indemnified for compensatory damages (which in this case could be substantial) and protecting the officer from prejudice by not revealing to the jury the officer's ability to pay punitive damages.

In *Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996), Judge Posner suggests that individual defendants "are reluctant to disclose their net worth in any circumstances." Whether or not this statement can be empirically established, the officer is not required to offer such evidence and may gain little by doing so where members of a jury will be well aware that police officers earn a modest income and would likely have a home as a principal asset. In any event, should the defendant officer offer evidence of inability to pay damages, the court will likely determine (at that time) that the door to indemnification is open.

## V. Motion to Bar Fraternal Order of Police (FOP) Disclaimer in Official Reports

The motion is denied. Defendants argue that plaintiff should be barred from questioning Officer Blake or any police officer witness about a disclaimer they may have placed in a statement given as part of an internal investigation by the police department. Defendants proffer that FOP, the collective bargaining unit representative for police officers, instructs its members to provide this disclaimer before completing statements related to such investigations. The disclaimer recites that the statement is not being given voluntarily but rather because it was ordered by a superior officer. The purpose and effect of the disclaimer is to protect the officer's privilege against self-incrimination

---

[12]"The defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab." *Kemezy v. Peters*, 79 F.3d 33, 37 (§ 1983 case treating the question whether a plaintiff seeking punitive damages must introduce evidence of the defendant's net worth.)

27

in a later criminal proceeding. *See Garrity* v. *New Jersey*, 385 U.S. 493 (1967) (statement obtained from police officer under threat of termination is inadmissible in subsequent criminal proceeding). Defendants argue that the evidence would be confusing to the jury, prejudicial, would undermine the public policy of facilitating internal investigations and would cause collateral litigation of the purpose and efficacy of the disclaimer.

Plaintiff responds that the evidence is "relevant" and the court infers that plaintiff means that the evidence is relevant to the officer's credibility in that if he gave the statement under threat of termination he was an unwilling witness and thus motivated to shape his statement favorably to himself, a response to an opposing inference that a statement given close to the time of the incident is likely credible. Plaintiff contends that the disclaimer is not standard, as defendants argue, and attaches a statement given in another incident by Defendant Blake in which that officer did not use the disclaimer.

The disclaimer is a form of "taking the Fifth." As such, it is admissible in a civil case. *See, e.g., Mitchell* v. *United States*, 526 U.S. 314, 327 (1999) ("This Court has recognized 'the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . .'"), *citing Baxter* v. *Palmigiano*, 425 U.S. 308, 318-19 (1967) (permitting adverse inference to be drawn from inmate's silence at his disciplinary proceeding is not, on its face, invalid practice).

## VI.     Motion to Bar Evidence or Argument Suggesting a "Code of Silence" Among Police Officers

Ruling is reserved. Defendants contend that evidence or argument that police officers lie for one another (the code of silence) is essentially bad act evidence and unfairly prejudicial. Plaintiff contends her counsel should be permitted to demonstrate bias, even a conspiracy among the officers,

28

and "to argue that police officers (like members of other tightly-knit, hierarchical organizations) are reluctant to implicate one another." Apparently plaintiff does not intend to offer any expert opinion or empirical evidence of a code of silence. In that event, counsel will not be permitted to argue that a code of silence exists. If the evidence demonstrates, however, a basis for plaintiff to argue that the officers involved in the events at issue shaped their testimony or statements so as to protect the shooter, then counsel may argue that they were motivated to protect--reluctant to implicate--fellow officers. A juror may use common sense and ordinary experience in the affairs of life to evaluate the evidence and the argument.

## VII. Motion to Bar Evidence and Argument Regarding Other Events Concerning Allegations of Police Misconduct

This motion is granted insofar as the evidence does not make a fact at issue more or less probable. For example, evidence derived from recent publicity concerning torture by members of the Chicago Police Department would be presumptively irrelevant. Plaintiff's scenario described at page 10 of her response is fraught with a variety of admissibility problems but the court reserves ruling.

## VIII. Motion to Bar Evidence and Argument Regarding *Monell* Claims

This motion is granted as to any evidence that would be relevant to the *Monell* claims only. It is otherwise denied.

## IX. Motion to Bar Evidence and Argument That Plaintiff Has Independent Claims for Relief or Damages

The motion is granted. Defendants contend and plaintiff concedes that any evidence relating to the loss of society that resulted from the death of plaintiff's son is irrelevant to plaintiff's federal claim because a parent has no constitutional right to recover for the loss of society and

29

companionship of her son, citing *Russ* v. *Watts*, 414 F.3d 783 (7th Cir. 2005).

Defendants further argue, however, that there should be no evidence or argument that plaintiff has an independent right of recovery under either her claim under the Illinois Wrongful Death Act, 740 ILCS 180/1-2, or her battery claim brought under the Illinois Survival Act, 755 ILCS 5/27-6. This, defendants contend, is because an action for wrongful death must be brought by the representative of the estate for the benefit of the estate and next of kin, not the representative. In this instance, it appears that plaintiff is both the representative of the estate and among the next of kin, so the importance of this motion is difficult to discern. *See Kessinger* v. *Grefco, Inc.*, 251 Ill.App.3d 980, 982, 623 N.E.2d 946, 948, (4th Dist.1993), citing *In re Estate of Finley*, 151 Ill.2d 95, 101, 601 N.E.2d 699, 701 (1992) (Purpose of Wrongful Death Act "is to compensate the surviving spouse and next of kin for the pecuniary losses sustained due to decedent's death.). Nevertheless, plaintiff's counsel is to bear this distinction in mind in framing questions and argument, and the verdict form should clarify any misunderstanding the jury might have.

## X.   Motion to Exclude Witnesses.

The motion is granted in part and denied in part. Defendants move to exclude all witnesses other than the parties from the courtroom during the testimony of any and all other witnesses, in accordance with Fed. R. Evid. 615. Any sibling who is not a witness in the liability phase of the case may be present. Any sibling who is a witness in the liability phase or damages phase is excluded until after having testified. Although the survival actions are for the benefit of the siblings, the representative is the formal party. Exclusion of these witnesses best serves the interest of justice by aiding the truth-seeking process.

## ORDER

For the reasons stated above, the court grants plaintiff's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth motions *in limine* [#102] and defendants' first, third, eighth, and ninth motions *in limine* [#105], denies defendants' second and fifth motions *in limine* [#105], grants in part and denies in part plaintiff's thirteenth motion *in limine* [#102] and defendants' tenth motion *in limine* [#105], grants in part and reserves ruling on defendants' seventh motion *in limine* [#105], and reserves ruling on defendants' fourth and sixth motions in limine [#105].

ENTER:

JOAN HUMPHREY LEFKOW
United States District Judge

DATED: August 4, 2006

31